IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHARON GRAY<br><br>Plaintiff,<br><br>v.<br><br>TRI-COUNTY ELECTRIC<br>MEMBERSHIP CORPORATION<br>d/b/a TRI-COUNTY EMC<br><br>Defendant. | Civil Action File No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Sharon Gray ("Gray" or "Plaintiff") and through the undersigned counsel of record, files this Complaint against Tri-County Electric Membership Corporation d/b/a Tri-County EMC ("EMC" or "Defendant") showing the Court as follows:

## JURISDICTION AND VENUE

1.

This is an action for (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) retaliation for engaging in activity protected under Title VII; and (3) discrimination based on race in violation of 42 U.S.C. § 1981 ("§ 1981"). This Court has original jurisdiction pursuant to 28 U.S.C. § 1331; Plaintiff also invokes this Court's pendent jurisdiction to hear her state law claims.

2.

Venue in this district and division is proper under 28 U.S.C. § 1391, as Defendant is located in the Middle District of Georgia, Macon Division, and the unlawful discriminatory and retaliatory conduct complained of herein occurred in this district and division.

3.

All conditions precedent to jurisdiction under Title VII have either occurred or been complied with. Specifically, Defendant meets the statutory definition of an "employer," and Plaintiff filed a timely Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). The Notice of Right to Sue for Plaintiff's Charge was issued by the EEOC on April 17, 2014. A true and correct copy of the Notice is attached hereto as **Exhibit A**. Plaintiff has brought suit within 90 days of receipt of her Notice of Right to Sue.

## PARTIES

4.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

Defendant is qualified and licensed to do business in Georgia and at all times material hereto has conducted business within this District. Defendant may be served with process through its Registered Agent, C. Hill Bentley, whose address is 310 West Clinton Street, Gray, Georgia 31032.

## FACTUAL ALLEGATIONS

6.

Tri-County Electric Membership Corporation, doing business as Tri- County EMC, is a non-profit Georgia Corporation operating as an electric energy provider in and around Gray, Georgia.

7.

Plaintiff, a Black female, was hired by Defendant on August 21, 2000. Plaintiff accepted a transfer to the position of Customer Service Representative ("Representative" or "Customer Service Position") in or around October of 2010.

She was employed as a Representative until her discriminatory discharge on or around February 4, 2013.

8.

Throughout her employment as a Representative for Defendant, Plaintiff was discriminated against because of her race and subjected to a racially hostile work environment.

9.

Among other things, Plaintiff was treated less favorably than White members of the Customer Service staff. When she was first transferred to the Customer Service Position, she was not provided with any job training, despite it being Defendant's policy to provide such training. Over the course of her employment as a Representative, Plaintiff regularly and repeatedly requested job training for her position, but such training was only provided on one occasion and was not at all sufficiently comprehensive. In contrast, White Customer Service Representatives were provided with frequent and comprehensive job training. Additionally, when White employees would make mistakes in their work, they were not disciplined or criticized, but rather were provided with additional support and job training. In contrast, mistakes by Plaintiff and other Black employees were met with harsh criticism and no additional training or support was provided.

Furthermore, Customer Service Manager Dawn Haskins, made a practice of assigning to Plaintiff and other Black employees tasks that she and other White employees considered undesirable and did not want to perform themselves. In short, Plaintiff and other Black employees were treated as second class employees, and provided with fewer resources and support. On information and belief, Defendant had a practice of paying White employees higher wages than Black employees for performing the same job functions.

10.

As well as being required to endure disparate treatment and job conditions, Plaintiff was also forced to endure harassment, bullying, and racial insults. For example, Ms. Haskins repeatedly made derogatory racial comments such as, "I have my tokens in place," in reference to Black employees who were perfunctorily in place although she preferred White employees. On one occasion in the late summer or fall of 2012, Ms. Haskins stated loudly in front of Plaintiff and her coworkers that EMC had "too many uppity niggers working here."

11.

Plaintiff repeatedly reported to her supervisor Brenda Applying that she felt she was being discriminated against and harassed because of her race by Ms. Haskins and others. No action was taken by Ms. Applying, who instead would

respond by advising Plaintiff that she simply needed to learn to tolerate the discrimination because that is "the way things are." On the occasion that Ms. Haskins stated that there were "too many uppity niggers," Plaintiff immediately reported this comment to Ms. Applying, who promised to take corrective action but cautioned Plaintiff not to speak of the incident to anyone else. There was no apparent corrective action regarding this incident or Ms. Haskins' behavior, though on information and belief, Ms. Applying told Ms. Haskins what Plaintiff had said.

12.

In or around November 2012, Ms. Applying told Plaintiff that she was doing well at her job, which was why she was being given more job responsibilities. However, in spite of this, in December 2012 Ms. Haskins did not grant Plaintiff the standard yearly wage increase and issued Plaintiff her first negative employment review in the time she worked for Defendant.

13.

In or around January 2013, as Plaintiff was returning to her workstation from lunch she overheard a White coworker, Julie Edwards talking to someone on the phone. Ms. Edwards stated that there were too many Black people around the office and that she was going to speak with Ms. Haskins about "taking care of it."

14.

In or around early 2013, Plaintiff became aware that a White employee of Defendant had asked to be transferred into the Customer Service Center where Plaintiff worked, but could not be transferred because there were no positions available.

15.

In early February 2013, Ms. Haskins terminated Plaintiff's employment, citing insignificant or wholly manufactured reasons to conceal the improper racial basis of Plaintiff's discharge. Just a few days after the termination of Plaintiff's employment, the White employee who had requested the transfer was hired to fill the position made available by Plaintiff's discharge.

16.

In contrast to the flimsy justification for Plaintiff's discharge, white employees of Defendants committed much more serious transgressions and remained employed. For example, Defendant promoted a White employee and sent him to a series of trainings to enable him to adequately perform his new job responsibilities. When this employee's performance remained extremely deficient and he continued to be unable to adequately perform the requirements of his new position, he was transferred back to his original position. Plaintiff, of course, was discharged rather than being reassigned to her former position.

## CLAIMS FOR RELIEF

## COUNT ONE
## ADVERSE EMPLOYMENT ACTION RACE DISCRIMINATION IN VIOLATION OF TITLE VII

17.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

18.

Throughout her employment with Tri-County EMC, Defendant discriminated against Plaintiff on the basis of her race by, among other things, subjecting her to racial insults and frequently and openly speaking of African Americans in a derogatory way.

19.

Plaintiff complained to her immediate supervisor that she was being harassed and discriminated against on the basis of her race, that she was being treated less favorably and given less desirable tasks because of her race, and that she did not receive adequate training because of her race. No action was taken by Defendants to correct this situation.

20.

In failing and refusing to provide Plaintiff with comparable employee training as her White colleagues, disciplining Plaintiff more harshly than her White

8

colleagues who were instead given corrective training, assigning Plaintiff less desirable tasks than were assigned to White employees, paying Plaintiff less than was paid to White employees who performed the same job duties, and ultimately terminating Plaintiff's employment on the basis of her race, Defendant subjected Plaintiff to tangible and adverse employment actions in violation of Title VII, 42 U.S.C. § 2000e *et seq*. These acts of illegal discrimination entitle Plaintiff to all appropriate relief provided under the statute.

21.

As a direct and proximate result of Defendant's unlawful discriminatory conduct, committed in derogation of her federally protected rights, Plaintiff has suffered lost wages and benefits of employment in an amount to be determined at trial.

22.

As a direct and proximate result of Defendant's intentional and unlawful conduct, committed in derogation of her federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of sleep, embarrassment, damage to her reputation, and other past and future pecuniary losses.

## COUNT ONE
## RETALIATION IN VIOLATION OF TITLE VII

23.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

24.

Throughout the course of her employment as a Representative for Defendant, Plaintiff repeatedly complained to her supervisor that she was being harassed and treated differently and worse than other employees because of her race. Rather than take any corrective action based on Plaintiff's reports of racial discrimination, Defendant retaliated against Plaintiff by writing her up and ultimately terminating her employment, and thereby violated Title VII.

25.

There was a causal connection between the protected conduct engaged in by Plaintiff and the adverse employment actions taken by Defendant.

26.

As a direct and proximate result of Defendant's unlawful retaliation, committed in derogation of Plaintiff's federally protected rights, Plaintiff has suffered lost wages and benefits of employment in an amount to be determined at trial.

27.

As a direct and proximate result of Defendant's intentional and unlawful conduct, committed in derogation of Plaintiff's federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of sleep, embarrassment, damage to her reputation, and other past and future pecuniary losses.

## COUNT THREE
## RACE DISCRIMINATION IN VIOLATION OF § 1981

28.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

29.

Plaintiff had a contractual employment relationship with Defendant.

30.

In failing to and refusing provide Plaintiff with comparable employee training as her White colleagues, disciplining Plaintiff more harshly than her White colleagues who were instead given corrective training, assigning Plaintiff less desirable tasks than were assigned to White employees, paying Plaintiff less than was paid to White employees who performed the same job duties, and ultimately terminating Plaintiff's employment on the basis of her race, Defendant has violated 42 U.S.C. § 1981. These acts of illegal discrimination entitle Plaintiff to all appropriate relief provided under the statute.

31.

As a direct and proximate result of Defendant's unlawful discriminatory conduct, committed in derogation of his federally protected rights, Plaintiff has suffered lost wages and benefits of employment, and will suffer additional lost wages and lost benefits of employment in the future, in an amount to be determined at trial.

32.

As a direct and proximate result of Defendant's intentional and unlawful conduct, committed in derogation of his federally protected rights, Plaintiff has suffered and continues to suffer from severe stress that has degraded his health, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future losses.

## **CLAIMS FOR RELIEF UNDER STATE LAW**

### **COUNT THREE**
### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

33.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

34.

Defendant's conduct toward Plaintiff on the basis of her race was extreme and outrageous.

35.

Defendant intended to inflict severe emotional distress on Plaintiff or knew that there was a high probability that their conduct would have this effect.

36.

Defendant's conduct actually caused severe emotional distress to Plaintiff.

37.

Therefore, Defendant is liable for all general and special damages proximately resulting from their intentional infliction of emotional distress. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

## COUNT FOUR
## NEGLIGENT RETENTION AND SUPERVISION

38.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

39.

Defendant knew, or in the exercise of ordinary diligence, should have known of Haskins' propensity for, among other things, intentionally harassing Plaintiff on the basis of her race, treating Plaintiff less favorably than other employees on the

basis of her race, improperly terminating Plaintiff's employment on the basis of her race, and intentionally acting to inflict emotional distress on Plaintiff.

40.

Defendant nevertheless failed and refused to act to protect Plaintiff.

41.

Defendant is thus liable to Plaintiff for all of the damages proximately resulting from its negligent retention and supervision of Haskins.

## COUNT FIVE
## PUNITIVE DAMAGES

42.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

43.

Defendant's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendant for and from such conduct in the future.

## ATTORNEY'S FEES

44.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

45.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

1) General damages for mental and emotional suffering caused by Defendant's misconduct;

2) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

3) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

4) Reasonable attorney's fees and expenses of litigation;

5) Trial by jury as to all issues;

6) Prejudgment interest at the rate allowed by law;

7) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

8) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

9) All other relief to which Plaintiff may be entitled.

Respectfully submitted the 13th day of June, 2014.

                                      **MOLDEN & HOLLEY, LLC**

                                      */s/ Regina S. Molden*
                                      Regina S. Molden
                                      Georgia Bar No. 515454
                                      Alec MacInnes
                                      Georgia Bar No. 106163
                                      Peachtree Center – Harris Tower
                                      233 Peachtree Street, NE
                                      Suite 1245
                                      Atlanta, GA 30303
                                      Phone: (404) 324-4500
                                      Fax: (404) 324-4501
                                      Email:    rmolden@moldenholley.com
                                                             amacinnes@moldenholley.com

                                      Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this Complaint complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia. Counsel hereby states that this Complaint has been typed in Times New Roman 14 point.

/s/ *Alec MacInnes*
Alec MacInnes
Georgia Bar No. 106163